# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 09-3118, 09-3221 & 09-3222

GEORGE ENNENGA, individually and as father
and next friend of India Ennenga, a minor,
and INDIA ENNENGA, a minor,

*Plaintiffs-Appellants/*
*Cross-Appellees,*

*v.*

BYRON E. STARNS, et al.,

*Defendants-Appellees/*
*Cross-Appellants,*

and

WOODRUFF A. BURT, et al.,

*Defendants-Appellees/*
*Cross-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Western Division.
No. 06 C 50117—**Frederick J. Kapala**, *Judge.*

ARGUED JANUARY 13, 2011—DECIDED APRIL 17, 2012

Before RIPPLE, EVANS*, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. This case involves claims of legal malpractice and breach of fiduciary duty stemming from a dispute about an inheritance. Not normally the subject of federal litigation, the case is in federal court based on the parties' diverse citizenship. Tom and Ida Lou Ennenga lived in rural northern Illinois and had three children—Constance (known as "Connie"), Lucie, and George—and an estate valued at $3 or $4 million. Connie and Lucie each had three children; George had one child, a daughter named India. In 2000 Tom and Ida Lou revised their estate plan with the assistance of Woodruff Burt, their Illinois lawyer, and Lowell Stortz, a Minnesota attorney and law partner of Connie's husband, Byron Starns. The revised estate plan contained a trust agreement that treated George Ennenga less favorably than his sisters and India less favorably than her cousins.

The Ennengas died within a month of each other in 2004. Their estate was probated without challenge in Illinois state court, although George and India sued to stop the sale of the family homestead to a third party. They abandoned that claim and eventually brought this suit in federal court against the three attorneys—Starns, Stortz, and Burt—and their law firms. They alleged legal malpractice and breach of fiduciary duty based on a

---

* Circuit Judge Terence T. Evans died on August 10, 2011, and did not participate in the decision of this case, which is being resolved by a quorum of the panel under 28 U.S.C. § 46(d).

conflict-of-interest theory; a later version of the complaint alleged that the attorneys had not drafted the estate plan as Tom and Ida Lou intended.

The district court rejected the conflict-of-interest argument and dismissed most of the claims as untimely or barred by res judicata. India's minor status tolled the statute of limitations, however, so her legal malpractice claim survived the motion to dismiss. The defendants moved for summary judgment, arguing that India's damages are speculative and might not materialize at all, and that she lacks factual support for her claim that the estate plan failed to carry out Tom and Ida Lou's intent. The court agreed with the first argument and dismissed India's claim as premature, later amending the judgment to reflect that the dismissal was without prejudice. George and India appealed. The defendants cross-appealed, asking that India's malpractice claim be dismissed with prejudice.

We affirm and grant relief on the cross-appeal. This case presents a tangle of procedural and substantive issues. Simplifying, we hold as follows: (1) although the district court dismissed India's claim without prejudice, we have appellate jurisdiction because the court is clearly done with the case; (2) the district court properly chose Illinois's statute of limitations over Minnesota's; (3) the court properly rejected George's waiver and equitable-tolling arguments, applied the relevant statute of limitations, and correctly dismissed his legal malpractice claims as untimely; and (4) the court properly dismissed the fiduciary-duty claims as barred

by res judicata. As for India's legal malpractice claim, we affirm on a ground raised below but not reached by the district court: There is no evidence to support India's contention that her grandparents intended her to receive more than the estate-plan documents provide. Accordingly, that claim was properly dismissed, but it should have been dismissed with prejudice.

## I. Background

Tom and Ida Lou Ennenga lived in Freeport, Illinois, and had an estate worth between $3 and $4 million. Their daughters, Connie and Lucie, each have three children; their son, George, has one child—his daughter, India. Connie's husband, Byron Starns, is a lawyer; when the Ennengas decided to revise their estate plan in the spring of 2000, they turned first to their son-in-law. Starns referred them to Lowell Stortz, one of his partners at the Minneapolis law firm of Leonard, Street and Deinard, P.A. After an initial meeting in April 2000, the Ennengas retained Stortz. They asked him to work with their Illinois lawyer Woodruff Burt of the Freeport firm of Schmelzle & Kroeger. (Burt later moved to the firm of Snow, Hunter, Whiton & Fishburn, which was briefly a defendant in this case.)

On May 5, 2000, Stortz sent Burt a letter relaying the Ennengas' request and describing his understanding of how they wanted their estate plan revised. Stortz asked Burt to carefully review the terms with the Ennengas. Burt and Stortz spoke on the phone on May 18, and later that day Burt sent Stortz a letter covering

the most important terms of the revised plan. Burt asked Stortz to reconfirm the details with the Ennengas. He did so, and on May 20 Tom Ennenga sent a letter to Stortz confirming that the couple's intent was as Burt described in his May 18 letter. He said: "We have reviewed the W.A. Burt letter to you. We believe it outlines our intentions quite clearly." Stortz then proceeded to draft the new estate plan in accordance with these instructions. He sent a proposed draft, along with a detailed cover letter explaining the plan's structure, to the Ennengas and Burt on July 13.

As relevant here, and simplifying somewhat, a revocable trust agreement divided the Ennengas' estate into thirds—one third for each of their children, Connie, Lucie, and George. From the beginning the Ennengas told Stortz they were concerned about George's money-management skills and wanted to control his access to the funds in his trust. To that end, the estate plan limited George's access to his share of the estate proceeds by means of a spendthrift trust. As such, George could not control the assets in his trust or access the principal except as specified in the trust agreement. The Ennengas did not, however, have the same concerns about their daughters. The trust agreement gave Connie and Lucie unlimited access to their trust funds.

The estate plan also contained directions for the distribution of any trust-fund assets that remained upon the death of the primary beneficiaries. When George dies, the remainder of his trust will be divided into equal shares among all seven of the Ennengas' living

grandchildren, including his daughter India, in a per capita distribution. In contrast, when Connie and Lucie die, the remainders of their trusts—provided they do not designate otherwise in their wills—will be divided among their own children in a per stirpes distribution.

The Ennengas signed the estate-plan documents on August 9, 2000. Almost two years later, on April 25, 2002, Tom asked Burt to videotape him discussing his estate plan. On the videotape Tom stated that the beneficiaries of his estate were George in a spendthrift trust, Connie's three children, and Lucie's three children. Inexplicably, Tom did not say anything about Connie, Lucie, or India. Burt later testified that this omission was an oversight because he did not prompt Tom to talk about these heirs on the videotape.

Ida Lou died on May 19, 2004, and Tom died a month later on June 20. Four days after Tom's death, the Ennengas' estate entered probate in Stephenson County, Illinois. George and India did not contest the will and trust documents. Instead they waited about a year and then sued Starns and Burt in Illinois state court to prevent the sale of the family home, alleging that George was promised an option to buy it. The home was sold to a third party, George and India abandoned the suit, and a judgment was entered dismissing their case.

In June 2006 George and India brought this suit in federal court alleging state-law claims for legal malpractice and breach of fiduciary duty against Starns,

Stortz, Burt, and their law firms.[1] All of the claims were initially premised on a conflict-of-interest theory based on the law-partner relationship between Stortz, who was primarily responsible for drafting the estate-plan documents, and Starns, the husband of one of the estate beneficiaries. The defendants moved to dismiss for failure to state a claim. The district court granted the motion, holding that under either Illinois's or Minnesota's Rules of Professional Conduct, the representation was not prohibited. *See* ILL. RULES OF PROF'L CONDUCT R. 1.8(c); MINN. RULES OF PROF'L CONDUCT R. 1.8(c).

The court granted leave to amend, and George and India filed an amended complaint asserting a claim for legal malpractice based on allegations that the defendants failed to effectuate the Ennengas' testamentary intent. Essentially, they claimed that the lawyers negligently drafted the trust agreement. They also asserted a claim for breach of fiduciary duty against Starns and a related "aiding and abetting" claim against Burt and his law firm. These claims were based on allegations that Starns, as trustee of the estate, wrongfully sold the family home without giving George the option to purchase it, and that Burt and his law firm were complicit in Starns's actions.

The defendants again moved to dismiss for failure to state a claim, this time arguing that George's legal mal-

---

[1] Jurisdiction is premised on diversity of citizenship. 28 U.S.C. § 1332. George and India Ennenga are citizens of New York. Starns, Stortz, and their law firm are citizens of Minnesota. Burt and his law firm are citizens of Illinois.

practice claim was untimely, and George and India's breach-of-fiduciary-duty and aiding-and-abetting claims were barred by res judicata. George and India responded in part by arguing that under Rule 12(g)(2) of the Federal Rules of Civil Procedure, these defenses were waived because they were not raised in the first motion to dismiss. The district court rejected this argument and dismissed George's legal malpractice claim as untimely and the fiduciary-duty claims as barred by res judicata. India's minor status tolled the statute of limitations, however, so her legal malpractice claim moved forward.

The case proceeded to the summary-judgment stage. Burt's law firm—Snow, Hunter, Whiton & Fishburn—moved for summary judgment, arguing that India's claim against it must be dismissed because Burt did not join the firm until well after the relevant estate-plan documents were drafted. The court agreed and granted summary judgment dismissing the firm from the case.[2] The remaining defendants also moved for summary judgment, arguing that India's claim failed on the merits or at the very least was premature because her damages were uncertain and might not ever arise. The court granted summary judgment on the latter ground. In short, the court held that if India dies before her father and aunts, and has no children, or if her father and aunts deplete their trust funds before they die, India will receive nothing regardless of the alleged malprac-

---

[2] The plaintiffs do not challenge this part of the district court's summary-judgment ruling.

tice. In other words, until India can take from the Ennengas' estate, any damages are speculative. At India's request the court amended the judgment to clarify that her legal malpractice claim was dismissed without prejudice.

George and India appealed from the following orders: (1) the district court's order dismissing with prejudice all but India's malpractice claim; (2) the order granting summary judgment for Starns, Stortz, their law firm, and Burt on India's malpractice claim; and (3) the final order amending the judgment to clarify that the dismissal of India's malpractice claim was without prejudice. The defendants filed a cross-appeal seeking review of the last two orders, arguing that India's malpractice claim should have been dismissed with prejudice.

## II.  Discussion

### A.  Appellate Jurisdiction

Because the district court dismissed India's legal malpractice claim without prejudice, we begin by addressing appellate jurisdiction. *See Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1097 (7th Cir. 2008) ("A court of appeals has an obligation to examine its jurisdiction sua sponte, even if the parties fail to raise a jurisdictional issue." (quotation marks omitted)). "Normally, a dismissal without prejudice is not a final order for purposes of appellate jurisdiction under 28 U.S.C. § 1291." *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008) (quotation marks omitted). There is a recognized exception, however, when the district court

makes it clear that it is "finished with th[e] case once and for all." *Id.*; *see also Mostly Memories*, 526 F.3d at 1097; *Hill v. Potter*, 352 F.3d 1142, 1144-45 (7th Cir. 2003).

In its summary-judgment order dismissing India's malpractice claim, the court said it was "closing" the case. The judge explained that the question of India's damages may be uncertain for quite some time—essentially, until her father and aunts die. The judge later amended the judgment to specify that the dismissal was without prejudice. This order, too, said the case was "closed" and gives no indication that the judge expects or would entertain an amended complaint. It's clear the district court is "finished with th[e] case once and for all," *Doss*, 551 F.3d at 639, and we have appellate jurisdiction.

**B.  George Ennenga's Legal Malpractice Claim**

In their amended complaint, George and India alleged that Starns, Stortz, and Burt committed legal malpractice by failing to properly effectuate Tom and Ida Lou's testamentary intent. The defendants moved to dismiss George's claim as untimely. (As we have noted, India's minority status tolled the statute of limitations.) It is undisputed that George, an intended beneficiary of the Ennengas' estate, is a proper plaintiff here. *See McLane v. Russell*, 546 N.E.2d 499, 503-04 (Ill. 1989). The question for us is whether the district court correctly dismissed his malpractice claim because it was filed outside the applicable limitations period. George challenges this ruling on multiple fronts.

First, he contends that the defendants waived the statute-of-limitations defense by not raising it in their first motion to dismiss. This argument is based on a misreading of Rule 12(g)(2) of the Federal Rules of Civil Procedure. That rule requires litigants to consolidate certain dismissal arguments in a single motion, but it also contains some important exceptions: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." The exception at issue here—contained in Rule 12(h)(2)—makes it clear that a litigant need not consolidate all failure-to-state-a-claim arguments in a single dismissal motion: "Failure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." FED. R. CIV. P. 12(h)(2).

The district court noted that a motion to dismiss on statute-of-limitations grounds qualifies as a motion to dismiss for failure to state a claim. *See Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) ("[A] district court may dismiss under Rule 12(b)(6) something that is indisputably time-barred . . . ."). As such, the court held that the Rule 12(h)(2) exception applied and the defendants' failure to raise the statute-of-limitations defense in their earlier Rule 12(b)(6) motion was not a waiver.

This ruling was sound. Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in

a successive motion. Stated differently, Rule 12(h)(2) specifically excepts failure-to-state-a-claim defenses from the Rule 12(g) consolidation requirement. The policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground. *See Pilgrim Badge & Label Corp. v. Barrios*, 857 F.2d 1, 3 (1st Cir. 1988). Rule 12(h)(1) enforces this consolidation requirement by adding a waiver rule: "A party waives any defense listed in Rule 12(b)(2)-(5) by . . . omitting it from a motion in the circumstances described in Rule 12(g)(2)" or by failing to preserve it "by motion under this rule" or "in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course." FED. R. CIV. P. 12(h)(1). Note the limitation, however. The Rule 12(h)(1) waiver rule applies only to the defenses listed in Rule 12(b)(2)-(5) (lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of process). Failure-to-state-a-claim defenses are thus excepted from the Rule 12(g)(2) consolidation requirement and not included in the Rule 12(g)(1) waiver rule.

And on the specific point raised here, we have held—albeit without much analysis—that a statute-of-limitations defense is not waived if raised for the first time in a successive motion to dismiss. *Perry v. Sullivan*, 207 F.3d 379, 381-83 (7th Cir. 2000). George argues that *Perry* is distinguishable because the plaintiff there conceded that the statute of limitations had run. That distinction goes to the merits of the defense, not whether the defense is waived.

George also contends that the statute-of-limitations defense was not properly raised in a motion to dismiss because the defense was not plain on the face of the complaint. The district court rejected this argument, holding that the issue could be resolved at the motion-to-dismiss stage based on the allegations in the complaint and a few undisputable facts within its judicial-notice power—specifically, the date on which the estate entered probate and the deadline for filing a claim within the probate proceeding.

This decision, too, was sound. Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment. *See Doss*, 551 F.3d at 640 (citing FED. R. CIV. P. 12(d)). A court may take judicial notice of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997). Here, the court took judicial notice of the dates on which certain actions were taken or were required to be taken in the earlier state-court litigation—facts readily ascertainable from the public court record and not subject to reasonable dispute. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (finding public court documents judicially noticeable).

Having cleared these hurdles, we now arrive at the merits of the statute-of-limitations defense. George first argues that the district court should have applied

Minnesota's statute of limitations, not Illinois's, because Starns and Stortz reside and practice law in Minnesota, and their firm is a Minnesota law firm. The district court evaluated the choice-of-law issue under the "most significant contacts" test and held that Illinois law applied.

This holding was correct, although a "significant contacts" analysis was ultimately unnecessary. Illinois choice-of-law rules apply. *Kalmich v. Bruno*, 553 F.2d 549, 552 (7th Cir. 1977). The district court correctly noted that Illinois courts apply the "most significant contacts" test from the *Restatement (Second) of Conflict of Laws*, which involves balancing a number of factors, including the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile or place of business of each party; and the place where the relationship between the parties is centered. *Wreglesworth ex rel. Wreglesworth v. Arctco, Inc.*, 738 N.E.2d 964, 971 (Ill. App. Ct. 2000).

However, the *Restatement* also contains a strong presumption that the forum state will apply its own statute of limitations. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 142 ("An action will not be maintained if it is barred by the statute of limitations of the forum, including a provision borrowing the statute of limitations of another state."). Illinois courts have adopted this presumption. *See Belleville Toyota, Inc. v. Toyota Motor Sales, USA, Inc.* 770 N.E.2d 177, 194 (Ill. 2002); *Emp'rs Ins. of Wausau v. Ehlco Liquidating Trust*, 723 N.E.2d 687, 692-93 (Ill. App. Ct. 1999). Thus, even when the substantive law

of a nonforum state applies, Illinois courts apply the Illinois statute of limitations "because statutes of limitations are procedural, fixing the time in which the remedy for a wrong may be sought rather than altering substantive rights."[3] *Freeman v. Williamson*, 890 N.E.2d 1127, 1133 (Ill. App. Ct. 2008). Accordingly, the district court properly applied Illinois's statute of limitations rather than Minnesota's.

George next argues that the statute-of-limitations defense could not be decided on a motion to dismiss because he raised a claim of equitable tolling based on

---

[3] The Illinois "borrowing statute" is an exception to this rule, but it has very limited application. The borrowing statute provides that "[w]hen a cause of action has arisen in a state or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this State." 735 ILL. COMP. STAT. 5/13-210. An additional judicially created condition narrows the borrowing statute even further: "[A]ll parties [must] be non-Illinois residents at the time the action accrued and until the limitations laws of the foreign state runs." *Emp'rs Ins. of Wausau v. Ehlco Liquidating Trust,* 723 N.E.2d 687, 693 (Ill. App. Ct. 1999). Thus, the Illinois courts have held that the borrowing statute applies only "where (1) the cause of action accrued in another jurisdiction; (2) the limitations period of that jurisdiction has expired; and (3) all parties were non-Illinois residents at the time the action accrued and remained so until the foreign limitations period expired." *Newell Co. v. Petersen,* 758 N.E.2d 903, 908 (Ill. App. Ct. 2001). The Illinois borrowing statute is not relevant here.

a fraudulent-concealment theory. This argument also fails. George's equitable-tolling argument is based on an email he inadvertently received from Burt on August 8, 2004.[4] As we will explain in more detail in a moment, under the applicable statute of limitations, the limitations period began to run on June 24, 2004, and ended on January 1, 2005. Accordingly, George knew the facts on which he bases his equitable-tolling claim well before the limitations period expired.

In Illinois, courts will not equitably toll a statute of limitations based on a claim of fraudulent conceal-ment "if the plaintiff discovers the fraudulent con-cealment and a reasonable time remains within the rele-vant limitations period . . . ." *Barratt v. Goldberg*, 694 N.E.2d 604, 609 (Ill. App. Ct. 1998) (citing *Anderson v. Wagner*, 402 N.E.2d 560 (Ill. 1979)). Here, George discovered the facts underlying his claim of fraudulent conceal-ment with almost five months left on the limitations clock. The district court correctly held that this was a reasonable time within which to comply with the stat-ute of limitations. We agree that equitable tolling does not apply.

George brings a claim of legal malpractice arising from the preparation of an estate plan. Illinois has estab-lished the following time limit for this particular kind of professional malpractice claim:

> When the injury caused by the act or omission does not occur until the death of the person for whom the

---

[4]  A copy of the email is attached to the amended complaint.

professional services were rendered, the action may be commenced within 2 years after the date of the person's death unless letters of office are issued or the person's will is admitted to probate within that 2 year period, in which case the action must be commenced within the time for filing claims against the estate or a petition contesting the validity of the will of the deceased person, whichever is later, as provided in the Probate Act of 1975.735 ILL. COMP. STAT. 5/13-214.3(d).[5] Any injury to George occurred upon the death of his father, "the person for whom the professional services were rendered." It was at this point that the terms of the trust agreement took effect. The two-year statute of limitations prescribed by section 5/13-214.3(d) therefore displaces the more generally applicable six-year limitations period. *See id.* 5/13-214.3(b)-(d).

However, because Tom Ennenga's will was admitted to probate within the two-year statutory period, the time limit was shortened even further. George was required

---

[5] George suggests that section 5/13-214.3(d) is invalid. The statute does have an unusual history. The Illinois legislature repealed it as part of a massive tort-reform effort. But the entire reform act was later held unconstitutional by the Illinois Supreme Court. *See Best v. Taylor Mach. Works,* 689 N.E.2d 1057, 1064 (Ill. 1997). In other words, the tort-reform bill killed this particular statute of limitations, but the bill's invalidation brought the limitations provision back to life. The Illinois Supreme Court enforces the provision in attorney malpractice cases. *See, e.g., Wackrow v. Niemi,* 899 N.E.2d 273, 276-77 (Ill. 2008).

to file his malpractice claim "within the time limit for filing claims against the estate or a petition contesting the validity of the will . . . whichever is later." *Id.* 5/13-214.3(d). The statutory period for a will contest is six months after the will is admitted to probate. 755 ILL. COMP. STAT. 5/8-1(a). Tom Ennenga's will was admitted to probate on June 24, 2004, so the will-contest period extended to December 24, 2004. But the claims notice in connection with the probate proceeding set a later claim-filing deadline—January 1, 2005—making that date the deadline for George's malpractice claim. George did not file this suit until June 2006. Accordingly, the district court correctly held that his malpractice claim was untimely.

## C. Breach of Fiduciary Duty/Aiding and Abetting

George and India also alleged that Starns, as the trustee of Tom and Ida Lou's trust, breached his fiduciary duty by selling the family home, a piece of trust property, to a third party without first giving George the option to buy it. They asserted a derivative claim against Burt for aiding and abetting this alleged fiduciary breach. The district court held that these interrelated fiduciary-duty claims are barred by res judicata.[6]

---

[6] George and India repeat their waiver argument in connection with the res judicata defense, claiming that the defendants waived res judicata by not raising it in their first motion to dismiss. Again, we disagree. Like a statute-of-limitations defense, res judicata may be brought in a Rule 12(b)(6) motion

(continued...)

Res judicata applies if there is (1) a final judgment on the merits in an earlier action; (2) an identity of the causes of action; and (3) an identity of parties or their privies. *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998). All three requirements are satisfied here. The parties are identical. The state-court suit pitted George and India against Starns and Burt, and the federal suit pits George and India against Starns, Burt, and Burt's law firm, with which he was in privity at the time the house was sold. *See Purmal v. Robert N. Wadington & Assocs.*, 820 N.E.2d 86, 94-95 (Ill. App. Ct. 2004). The causes of action share a common identity in that they "arise from a single group of operative facts*." River Park*, 703 N.E.2d at 893. Here, as in the state-court litigation, George and India allege that Starns had a duty to offer George the option to buy the Ennenga family home before selling it to a third party.

---

[6] (...continued)

for failure to state a claim, *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008), which is exempt from Rule 12(h)(2)'s consolidation requirement and is not subject to Rule 12(h)(1)'s waiver rule. *See, e.g., Diaz-Buxo v. Trias Monge*, 593 F.2d 153, 154-55 (1st Cir. 1979) (permitting res judicata defense raised for the first time in a second motion to dismiss despite a Rule 12(g) argument where there was no prejudice to plaintiff). George and India also reiterate their argument that the defense cannot be resolved on a motion to dismiss. Like the statute-of-limitations defense, however, all the facts relevant to the res judicata defense are ascertainable from the second amended complaint and judicially noticeable records from the state-court case. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

Finally, the state court dismissed George and India's case for failure to state a claim after the home was sold and they abandoned their claim. This was a final judgment on the merits. *See* ILL. SUP. CT. R. 273 ("Unless . . . otherwise specifie[d], an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits.").

George and India insist that their state-court action for equitable relief cannot preclude this federal action for money damages because the former did not give them access to a jury. For support they rely on *Weisman v. Schiller, Ducanto & Fleck*, 733 N.E.2d 818 (Ill. App. Ct. 2000), but that case is inapplicable. *Weisman* involved a law firm's petition under the Illinois Marriage and Dissolution of Marriage Act to recover fees for services rendered in a client's divorce. *Id.* at 820. To avoid paying the legal fees, the client alleged that the lawyer had been negligent. *Id.* In a later suit for legal malpractice, the Illinois Appellate Court held that although the elements of res judicata were technically met, the second suit was not precluded. *Id.* at 820-21. The court gave two reasons. First, the client could not have counterclaimed for legal malpractice in the fee-petition action because the court lacked subject-matter jurisdiction to entertain such a claim. *Id.* at 821. Second, because the Illinois Marriage Dissolution Act explicitly bars jury trials, 750 ILL. COMP. STAT. 5/103, applying res judicata would have denied the client a fundamental right under the Illinois constitution, *Weisman*, 733 N.E.2d at 821-22.

Neither of these reasons applies here. George and India could have litigated their substantive arguments in full in the original state-court action. They were free to assert their claims for breach of fiduciary duty and seek money damages in that case; had they done so, they would have had access to a jury. Here, in contrast to *Weisman*, there was no jurisdictional impediment to suit or statutory bar to a jury trial.

Because all the elements of res judicata are met, and George and India could have raised their fiduciary-duty claims in their state-court action, the district court correctly held that they were precluded from doing so here. *See Chi. Title Land Trust Co. v. Potash Corp.*, 664 F.3d 1075, 1080 (7th Cir. 2011) ("[I]f the three elements necessary to invoke res judicata are present, res judicata will bar not only every matter that was actually determined in the first suit, *but also every matter that might have been raised and determined in that* suit.") (applying Illinois law).

## D.  The Cross-Appeal

The district court dismissed India's malpractice claim at the summary-judgment stage, holding that because her damages are speculative and might never arise, her claim is premature. George and India appealed from this ruling. At India's request the court later amended the judgment to clarify that the dismissal was without prejudice. The cross-appeal by Starns, Stortz, their law firm, and Burt challenges this aspect of the judgment. They argue that the court should have

dismissed India's malpractice claim *with* prejudice because India has no evidence to support her claim that they committed legal malpractice. We agree. Accordingly, we resolve this issue on alternative grounds—fully preserved in the district court—and do not address the district court's prematurity ruling. *See Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 572 (7th Cir. 2009) ("[We] can affirm summary judgment on any non-waived ground, even if the district court did not address it.").

"Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Siliven v. Ind. Dep't of Child Serv.*, 635 F.3d 921, 925 (7th Cir. 2011) (citing FED. R. CIV. P. 56(c)). To prevail on a legal negligence claim under Illinois law, India must prove "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the breach."[7] *Pelham v. Griesheimer*, 440 N.E.2d 96, 98 (Ill. 1982).

---

[7] An attorney-client relationship "is not an indispensable prerequisite to establishing a duty of care between a non-client and an attorney" as long as "the intent of the client to benefit the nonclient third party was the primary or direct purpose of the transaction or relationship." *Pelham v. Griesheimer*, 440 N.E.2d 96, 99 (Ill. 1982). It is undisputed that the Ennengas intended their revised estate plan to benefit their children and grandchildren, including India. *See McLane v. Russell*, 546 N.E.2d 499, 503-04 (Ill. 1989) (finding the *Pelham* test met for an intended beneficiary under a will).

India's theory of malpractice is that the Ennengas intended each of their seven grandchildren to take an equal share of their estate after their primary beneficiaries died, but the lawyers negligently drafted the estate plan contrary to that intent. Under terms of the trust agreement, each grandchild will receive one-seventh of the remainder of George's trust, but India's six cousins might receive more from their mothers' trusts during their lifetimes or when their mothers die. The question here is whether this unequal treatment violates the Ennengas' testamentary intent.

We begin by "examining the entire trust and . . . giving . . . the words employed their plain and ordinary meaning." *Harris Trust & Sav. Bank v. Donovan*, 582 N.E.2d 120, 123 (Ill. 1991). The terms of the trust agreement are clear and unambiguous. Section 8.B.2.c provides:

> At GEORGE ENNENGA's death, or if he predeceases the survivor of my spouse and me, the Trustee shall divide GEORGE'S TRUST into as many equal shares as shall be necessary to allocate one trust share for the benefit of each grandchild of mine who is then living, and one trust share for the benefit of the then living issue, collectively, of a deceased grandchild of mine . . . .

Section 8.B.3.c provides:

> Upon the death of [Connie or Lucie], the Trustee shall distribute the then remaining balance of her trust as follows:
>
> > 8.B.3.c.i. The Trustee shall pay to or apply directly for the benefit of the surviving spouse or

> issue of such child . . . such amounts from the principal of her trust as such child shall designate by her Will . . . .
>
> 8.B.3.c.ii. After making the distributions, if any, required under the preceding subparagraph, the Trustee shall distribute the balance of such child's trust to her surviving issue . . . .

The agreement is signed by the Ennengas, and there are no allegations of undue influence or duress. As such, it is the clearest and most reliable expression of their intent.

India does not dispute that the terms of the trust agreement are clear. Instead, she relies on extrinsic evidence to argue that her grandparents intended otherwise. In most cases extrinsic evidence is admissible only if the terms of a trust are ambiguous. *See Altenheim German Home v. Bank of Am., N.A.*, 875 N.E.2d 1172, 1177 (Ill. App. Ct. 2007). But legal malpractice cases are an exception under Illinois caselaw. *See Ogle v. Fuiten*, 445 N.E.2d 1344, 1347 (Ill. App. Ct. 1983) (contrasting will-construction suits with legal malpractice claims for negligently drafting a will).

This makes sense. The focus of the inquiry in this kind of legal malpractice claim is whether the attorney negligently drafted the relevant estate-plan documents. Extrinsic evidence that conflicts with the terms of the agreement will generally form the basis of the plaintiff's claim. And because the claim seeks damages from the attorney, *Ogle v. Fuiten*, 466 N.E.2d 224, 227 (Ill. 1984), the use of extrinsic evidence to determine the client's intent does not risk "modify[ing] the document or creat[ing] new

terms" where "the language of a document is clear," *Peck v. Froehlich*, 853 N.E.2d 927, 934 (Ill. App. Ct. 2006). Extrinsic evidence of the Ennengas' intent is thus admissible. Even so, India faces a steep hurdle in challenging the unambiguous terms of the signed trust agreement.

The primary evidentiary battleground is the correspondence between the attorneys and their notes predating the Ennengas' execution of the trust agreement. India relies primarily on three specific items of evidence. The first is a handwritten note by Stortz from his first meeting with the Ennengas: "Goal = on children's Deaths, make sure all grandchildren treated equally." The second is a sentence from Stortz's May 5 letter to Burt: "Because they now have seven grandchildren, they would like each grandchild to ultimately receive or benefit from 1/7 of the estate (either as a direct gift if their parents have died, or as an indirect result of inheritance by their parents)." And the third is a notation in Burt's billing records from May 9: "Grandchildren per capita?" India claims that this evidence demonstrates that her grandparents were considering an arrangement whereby each grandchild would be treated equally and would take per capita from his or her respective parent's trust.

At first blush, and considered in isolation, these discrete pieces of evidence might appear to support India's theory. But these items of evidence must be considered in context and in light of other evidence that convincingly shows the Ennengas' intent was precisely as the trust agreement provides. For example:

- The handwritten notes from Stortz's initial meeting with the Ennengas in April 2000 state: "On George's Death, Split among grandchildren equally," and "George's Full GST plan; On his death, amount equal to 1/7 to her (George may have other children)."

- The May 5 letter from Stortz to Burt describing the initial meeting states:

  George has one daughter, India, who according to Tom and Ida Lou will be well provided for by her mother's parents. As a result, Tom and Ida Lou would like the trust held for George, following George's death, to be distributed in part to India and the balance in equal shares to their other grandchildren.

- The May 18 letter from Burt to Stortz states: "George's share is to remain in trust for his life. . . . Upon his death, the remaining principal and undistributed net income are to be divided, per capita, among the Settlors' grandchildren."

- The May 20 letter from Tom Ennenga to Stortz confirms that Burt's May 18 letter accurately states his and his wife's intent.

- Stortz's June 21 memo to file states: "On George's death, his share will be split equally among the grandchildren of Thomas and Ida Lou Ennenga . . . ."

- Stortz's July 13 letter to the Ennengas, with the final will and trust documents attached, summarizes the documents over several detailed pages. The letter states: "At George's death, his trust will

be divided into equal shares, one share for each of your grandchildren . . . ." It then describes the gifts to George's sisters: "For Connie and Lucie's shares, any remaining amounts exempt from GST Tax will be held in trust during their lifetimes. At each child's death, their respective GST Trusts will be divided among their children . . . ."

The trust documents are fully consistent with this extrinsic evidence of the Ennengas' intent. And this evidence also provides important interpretive context for each of the three specific notations on which India relies to support her claim. For example, immediately following Stortz's notation "Goal = on children's Deaths, make sure all grandchildren treated equally" is this statement: "On his death, amount equal to 1/7 to her (George may have other children)." The second statement thus qualifies the first and confirms that the Ennengas' goal was to treat all grandchildren equally *in the distribution of George's trust*.

Similarly, in Stortz's May 5 letter, immediately before his statement that the Ennengas "would like each grandchild to ultimately receive or benefit from 1/7 of the estate," Stortz wrote as follows:

> George has one daughter, India, who according to the Ennengas will be well provided for by her mother's parents. As a result, Tom and Ida Lou would like the trust held for George, following George's death, to be distributed in part to India and the balance in equal shares to their other grandchildren.

Again, reading these passages together clarifies that Stortz was making a record of the Ennengas' instructions regarding the distribution of the remainder of George's trust. It also explains why the Ennengas were not concerned with giving India only one-seventh of her father's trust, while the other grandchildren might eventually take more from their mothers—they understood that she would be well provided for by her other grandparents.

Finally, the passage in Burt's May 18 letter stating that "[u]pon [George's] death, the remaining principal and undistributed net income are to be divided, per capita, among the Settlors' grandchildren," explains the earlier, cryptic notation in Burt's billing records that inquires, "Grandchildren per capita?" Considered together, and in light of the other evidence of the Ennengas' intent, this billing-record notation can only be understood as a query about how the remainder of George's trust was to be distributed.

It's worth noting that other than asserting that the Ennengas generally intended each grandchild to take one-seventh of the estate, India has not been clear about what precise remainder scheme her grandparents intended. At times she suggests the Ennengas wanted any remainder of Lucie's and Connie's trusts to be divided among all the grandchildren. But the record contains no evidence whatsoever to support that contention. At other times she suggests that her grandparents intended her to receive the full remainder of her father's trust—that is, that all the trusts were to be

distributed per stirpes. Although such an arrangement serves an abstract idea of equal treatment, it does not align with the goal—the one she supposes her grandparents intended—that each grandchild receive one-seventh of the estate. Indeed, because India is George's only child and the spendthrift controls on his trust make it more likely that trust assets will remain when he dies, structuring the estate plan in this way would likely result in India taking much more than a one-seventh share.

Although India makes much of it, the video of Tom Ennenga discussing his estate plan adds nothing to the analysis. On the tape Tom never mentions India or meaningfully discusses how the grandchildren would take under the trust scheme. His reference to the beneficiaries of his estate mentions only George and Connie's and Lucie's children. As importantly, the video was filmed two years *after* the execution of the trust agreement. The temporal focus here is on Tom and Ida Lou's intent *when they signed the trust agreement*. The video sheds little light on that question.

Finally, the report of India's expert is not enough to forestall summary judgment. India emphasizes her expert's interpretation of the attorneys' correspondence and meeting notes. For example, the expert states: "[W]e know that Tom and Ida Lou's goal was rough equality among all grandchildren, with some grandchildren receiving their shares directly, while others receiving them by inheritance from their parents." This is not a statement of expert opinion; it is speculation about the ultimate issue of fact, which is insufficient to avoid sum-

mary judgment. *See Weigel v. Target Stores*, 122 F.3d 461, 469 (7th Cir. 1997) ("A party cannot assure himself of a trial merely by trotting out in response to a motion for summary judgment his expert's naked conclusion about the ultimate issue." (quotation marks omitted)). True, India's expert offers an opinion that the trust agreement was irregular. This is perhaps more squarely within his role, but it is beside the point. The evidence establishes that the more unusual elements of the trust scheme—e.g., the restrictive terms of George's trust as compared to those of his sisters, and the distribution of the remainder of George's trust among all seven grandchildren—were exactly what the Ennengas intended.

In sum, India lacks evidence to support her claim that Stortz, Starns, or Burt breached their duty of care by drafting the Ennengas' estate plan in violation of their intent. Accordingly, India's legal malpractice claim should have been dismissed with prejudice.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's dismissal of George's legal malpractice claim as time-barred. We also AFFIRM the dismissal of the fiduciary-duty claims as barred by res judicata. Finally, we AFFIRM the dismissal of India's legal malpractice claim on other grounds and REMAND with instructions to modify the judgment to reflect that the claim is dismissed with prejudice, consistent with this opinion.