**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 29, 2019[*]
Decided August 29, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 17-2848

| | |
|---|---|
| MAURICE SHAW, <br>     *Plaintiff-Appellant*, <br><br> *v.* <br><br> WEXFORD HEALTH SOURCES, INC., <br> *et al.*, <br>     *Defendants-Appellees*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 13-cv-09335 <br><br> Sharon Johnson Coleman, <br> *Judge*. |

**O R D E R**

Maurice Shaw, an Illinois inmate, asserts that a prison medical doctor delayed treating his injured shoulder with physical therapy, in violation of the Eighth Amendment. *See* 42 U.S.C. § 1983. The district court entered summary judgment for the doctor, concluding that Shaw lacked evidence showing that the treatment he received departed from accepted medical standards or that the doctor was responsible for the delay. We affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

Shaw hurt his shoulders while bench pressing in the prison yard in 2010. Because both shoulders could not be treated at the same time, Shaw sought treatment first for his left shoulder and wore a protective sling. He then sought treatment for his right shoulder in February 2012. He was referred to the University of Illinois at Chicago for an assessment. An MRI taken in May revealed a partial tear in his right rotator cuff, and an orthopedic surgeon at UIC recommended that Shaw undergo four months of physical therapy.

A Wexford staff physician at the prison approved the recommendation and forwarded it to the prison's Medical Records Department with instructions to send it to the Physical Therapy Department. A month passed with no word about the physical therapy. Shaw then filed a grievance describing the MRI results and the recommendation for physical therapy. In September, the grievance officer denied his grievance, explaining that Shaw's medical file contained no order specifying that he should receive physical therapy.

That same month, the prison medical director, Dr. Saleh Obaisi, evaluated Shaw for the first time. Dr. Obaisi examined Shaw's right shoulder, reviewed the MRI results, and diagnosed tendinosis. He offered Shaw a steroid injection to reduce pain and inflammation.

By March 2013, Shaw had yet to receive physical therapy, so he filed another grievance. He met with a physician's assistant and showed her copies of his MRI results and the recommendation for physical therapy. She then ordered physical therapy and wrote that it be done "ASAP." Still no therapy took place.

The next month Shaw met again with Dr. Obaisi, who charted a plan for physical therapy and referred him to the Physical Therapy Department. The doctor also referred Shaw back to the UIC orthopedic clinic for a follow-up visit.

In August, Dr. Obaisi examined Shaw a third time, gave him another steroid injection, prescribed two medications for inflammation and pain, and ordered an x-ray of his right shoulder. About a week later, Shaw finally began physical therapy.

Shaw sued Dr. Obaisi[1] for being deliberately indifferent to his pain and need for physical therapy. The district court entered summary judgment for the doctor, concluding that Shaw's medical need was serious, but no evidence in the record reflected that Dr. Obaisi had acted with deliberate indifference. According to the court, there was no evidence that Dr. Obaisi was personally responsible for any delays or that his prescribed treatment regimen departed from accepted medical standards.

On appeal, Shaw first argues that a material dispute exists over whether Dr. Obaisi acted with deliberate indifference by delaying the implementation of the orthopedic surgeon's physical-therapy recommendation for 14 months. Dr. Obaisi must have known about the recommendation, Shaw insists, because he reviewed the MRI at their first meeting in September 2012.

Shaw, however, has not put forth evidence that Dr. Obaisi knew about the recommendation or refused to refer him for physical therapy. To establish deliberate indifference, Shaw had to put forth evidence from which a jury could find that Dr. Obaisi knew of and recklessly disregarded a serious health concern, for which the doctor was personally responsible. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Arnett v. Webster*, 658 F.3d 742, 755–57 (7th Cir. 2011). The record shows that Dr. Obaisi learned of the recommendation for therapy at Shaw's second evaluation in April 2013. At that time, Dr. Obaisi referred Shaw to the prison's Physical Therapy Department as well as to the orthopedic surgeon for a follow-up visit. Although another four months passed before Shaw received physical therapy, he has not presented evidence that this delay can be imputed to Dr. Obaisi. *See Arnett*, 658 F.3d at 757. To the extent that Shaw faults Dr. Obaisi for missing the recommendation for physical therapy in his medical file, such an oversight may amount to negligence but cannot establish deliberate indifference. *See id.* at 758 (doctor's failure to inquire about delay in receiving prescribed medication for rheumatoid arthritis, despite patient's repeated requests, may reflect negligence but not deliberate indifference).

---

[1]Dr. Obaisi is now deceased and Ghaliah Obaisi, the Independent Executor of the Estate of Saleh Obaisi, is substituted as a party in this case. Shaw also sued a host of other defendants—a grievance officer, several medical directors, a healthcare administrator, the prison's medical-services contractor, and two wardens—but he does not contest the district court's entry of summary judgment in their favor, so we say nothing more about these defendants here.

Shaw next maintains that there is a genuine issue of fact about whether Dr. Obaisi's initial course of treatment—steroid injections and anti-inflammatory medication—substantially departed from accepted medical judgment. A substantial departure in care may amount to deliberate indifference. *See Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008). Shaw relies on the expert report of Dr. Mitchell Sheinkop, an orthopedic surgeon, who opined that the standard treatment for rotator cuff-related symptoms is physical therapy.

Dr. Sheinkop's report, however, fails to substantiate how Dr. Obaisi's initial treatment departed from accepted medical judgment. Dr. Sheinkop asserted that therapy is the standard of care, but he said nothing about why that is, or support his conclusion with any reference to medical sources. Indeed, elsewhere in the report, Dr. Sheinkop suggested the contrary: he noted that patients with partial tears in their rotator cuff can be treated with "exercise and/or non-steroidal anti-inflammatory drugs." An article he attached to his report even highlighted that "[a]nti-inflammatory medication, steroid injections, and physical therapy may all be of benefit in treating symptoms of a cuff tear." An expert's unsupported speculation about an ultimate issue of fact is insufficient to avoid summary judgment. *See Ennenga v. Starns*, 677 F.3d 766, 781 (7th Cir. 2012); *see also Bourke v. Conger*, 639 F.3d 344, 347 (7th Cir. 2011) ("[A]n expert report that lacks foundation and depth will be given little consideration by courts."). Dr. Sheinkop's report fails to raise a genuine fact question about whether Dr. Obaisi's initial treatment of steroid injections and anti-inflammatory medicine departed from accepted medical judgment.

AFFIRMED