(No. 66019.—

KEITH McLANE *et al.*, Appellees, v. FRED G. RUSSELL *et al.*, Appellants.

*Opinion filed September 27, 1989.—Rehearing denied December 4, 1989.*

510

Heyl, Royster, Voelker & Allen, of Peoria (Lyle W. Allen, Robert H. Shultz, Jr., and Karen L. Kendall, of counsel), for appellants.

Jerome Mirza & Associates, Ltd., of Chicago (Jerome

Mirza, of counsel), for appellees.

JUSTICE WARD delivered the opinion of the court:

The plaintiffs, Keith McLane and Cecil McLane, individually and as executor of the estate of Grace Shugart, who were named beneficiaries under a will, instituted an action for legal malpractice in the circuit court of Peoria County against Fred Russell, the attorney who drafted the will, and his law firm, Johnson, Martin & Russell, a professional corporation. Following trial, the jury returned a verdict for the plaintiffs in the amount of $325,000. The trial court granted the defendants' motion for setoff and reduced the verdict by one-half of the amount the plaintiffs received in a pretrial settlement with the estate of a sister of the testator, against which the plaintiffs had filed a suit. Upon the defendants' appeal and the plaintiffs' cross-appeal, the appellate court affirmed. (159 Ill. App. 3d 429.) We allowed the defendants' petition for leave to appeal (107 Ill. 2d R. 315).

The plaintiffs, Cecil McLane and his son, Keith, were tenant farmers on a 240-acre farm located in Bureau County owned by Grace and Helen Shugart, two unmarried sisters. In 1942, the Shugart sisters executed wills in which they left all of their property to each other. In 1958, attorney Fred Russell, a defendant in this action, began to represent Grace and Helen Shugart. At their request, Russell placed their farm in joint tenancy ownership with right of survivorship. In 1961, Russell drafted a new will for Grace under the terms of which all her property was left to Helen. Helen was adjudicated incompetent in 1971 and Russell was appointed her conservator. Subsequently, Grace went to the defendant's office and discussed methods of leaving the farm to the McLanes.

In 1975, Russell drafted a new will for Grace which contained the following paragraph:

"ARTICLE XI

I devise and bequeath unto CECIL McLANE, who has worked for me and my sister, Helen R. Shugart, and been our farm tenant for a period of over 28 years, a life estate in my interest in the home farm situated in *** Bureau County, Illinois, containing 240 acres, more or less, for him to use and to receive all income therefrom for and during his lifetime; he, however, to pay the taxes and to keep the improvements adequately insured and maintained during his tenure as life tenant. Upon the demise of the said Cecil McLane, I hereby devise unto his son, KEITH McLANE, the remainder of my interest in said real estate."

In 1976, Russell revised Grace's 1975 will, making some minor changes unimportant here, but leaving unchanged the provision devising a life estate of Grace's interest in the farm to Cecil McLane and a remainder interest to Keith McLane. The joint tenancy in the Shugart farm was never severed. Upon Grace's death in 1977, legal title to the farm passed by operation of law to the surviving joint tenant, Helen Shugart. On Helen's subsequent death, title to the farm transferred by intestate succession to the Shugarts' cousins in fee simple.

The plaintiffs, Cecil and Keith McLane, brought this legal malpractice action in the circuit court of Peoria County. The plaintiffs alleged that Russell was negligent in failing to sever the joint tenancy between the sisters, in failing to advise Grace that a severance of the joint tenancy was necessary to devise her interest in the farm to the plaintiffs, and in drafting a will which operated to defeat Grace's testamentary intent. The plaintiffs claimed that Russell's negligence permanently deprived them of Grace's interest in the farm and they claimed damages in the amount of one-half of the value of the Shugart farm.

Following a four-day trial, the jury returned a verdict for the plaintiffs in the amount of $325,000, representing one-half of the value of the farm. The trial court allowed the defendants' motion for a setoff, and reduced the verdict by one-half of the amount the plaintiffs received in settlement of their suit against Helen Shugart's estate, thereby reducing the damage award to $258,545.

The defendants appealed, claiming *inter alia* that venue was improper in Peoria County, and that the plaintiffs were not intended beneficiaries of the attorney-client relationship between Russell and Grace and had no right to bring an action for legal malpractice against the defendants. The plaintiffs cross-appealed, claiming that the defendants were not entitled to a setoff and requesting reinstatement of the judgment in full. As stated, the appellate court affirmed the judgment of the circuit court (159 Ill. App. 3d 429).

Three issues are presented for our review: (1) whether the plaintiffs were intended beneficiaries of the attorney-client relationship between Russell and Grace Shugart and thereby entitled to bring a legal malpractice action against the defendants; (2) whether venue was proper in Peoria County; and (3) whether the defendants were entitled to a setoff.

To state a legally sufficient claim for negligence, a plaintiff must allege the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162.) The determination of whether a duty exists is an issue of law to be determined by the court. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525.) To conclude that a duty exists, a court must find that the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the

plaintiff. *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525.

Typically, an attorney owes a professional obligation only to his client, not to nonclient third persons. (*National Savings Bank v. Ward* (1880), 100 U.S. 195, 25 L. Ed. 621; *Byron Chamber of Commerce, Inc. v. Long* (1981), 92 Ill. App. 3d 864, 868.) In *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, this court held that, under limited circumstances, a nonclient may maintain a negligence action against an attorney. Under *Pelham*, a nonclient may maintain a negligence action against an attorney only when the nonclient can show that he was the primary intended beneficiary of the attorney-client relationship. *Pelham* held that a nonclient-plaintiff seeking to recover in tort for legal malpractice must establish that the defendant-attorney owed him a duty of due care by showing that the primary purpose of the relationship between the defendant-attorney and the client was to benefit or influence the nonclient-plaintiff. *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13.

The evidence in *Pelham* showed that the plaintiffs' mother retained the defendant-attorney to represent her in a divorce proceeding against her husband. Although the divorce decree required the husband to maintain his children as the primary beneficiaries of his life insurance policies, the husband subsequently remarried and named his second wife as the sole beneficiary of his only insurance policy. His second wife received the proceeds of the policy after his death. The children sued the attorney who represented their mother in the divorce proceeding for negligence, claiming that they were direct third-party beneficiaries of the contract between their mother and her attorney. The court concluded that the plaintiffs' mother retained the defendant to obtain a divorce, a property settlement, and custody of the children, not to represent her children's interests as beneficiaries under

an insurance policy, and that the plaintiffs were incidental, rather than intended, beneficiaries of the contract between their mother and her attorney.

The appellate court applied the doctrine stated in *Pelham* to the facts in this case, and concluded that the plaintiffs could maintain a legal malpractice claim against the defendants. The court held that the plaintiffs had proved that that the primary purpose of the 1975 and 1976 transactions between Grace Shugart and Fred Russell, in which Russell drafted Grace's wills, was to confer a benefit upon the McLanes. The court concluded that evidence established that Grace's intent was to confer her one-half interest in the farm to the McLanes at her death. 159 Ill. App. 3d at 433.

The defendants argue that the appellate court's decision conflicts with this court's decision in *Pelham* in two respects. First, they argue that the appellate court improperly focused upon a single transaction between Russell and Grace Shugart, rather than the attorney-client relationship they had maintained for 25 years prior to the time the 1975 will was drafted. They claim that, had the appellate court properly focused upon the entire attorney-client relationship rather than a single transaction, it would have concluded that the primary intended beneficiary of the relationship between Russell and Grace Shugart was Grace's sister, Helen Shugart.

The language in *Pelham* refutes the defendants' claim that a court may not consider a single transaction between an attorney and client when determining whether the attorney owes a duty to a nonclient. In defining the circumstances in which an attorney may be held liable to a nonclient, *Pelham* stated:

> "In the area of legal malpractice the attorney's obligations to his client must remain paramount. In such cases the best approach is that the plaintiffs must allege and prove facts demonstrating that they are in the nature of

third-party intended beneficiaries of the relationship between the client and the attorney in order to recover in tort. [Citations.] By this we mean that to establish a duty owed by the defendant attorney to the nonclient the nonclient must allege and prove that the intent of the client to benefit the nonclient third party was the primary and direct purpose of the *transaction* or *relationship*. [Citation.]" (Emphasis added.) *Pelham*, 92 Ill. 2d at 20-21.

The language in *Pelham* specifically authorizes courts to consider a single "transaction" between an attorney and client in determining whether the nonclient and the attorney stood in such a relationship to one another that the law imposes a duty upon the defendant-attorney for the benefit of the plaintiff. That Russell established an attorney-client relationship with Grace Shugart in 1958, and drafted several wills during their long-term professional relationship, did not relieve him of his obligation to act with professional due care in drafting the 1975 will so as to effectuate her intent to benefit the McLanes.

The defendants next argue that the appellate court's decision conflicts with *Pelham*, because it authorizes contingent, as well as intended, beneficiaries under a will to sue the attorney who drafted the will for negligence. They argue that Grace intended to confer a benefit on the defendants only under certain circumstances which did not occur. They claim that Grace did not arrange to sever the joint tenancy to the farm because she intended to devise the farm to the McLanes in her will only if her sister, Helen, died first. They urge that the McLanes were not primary or direct beneficiaries of the attorney-client relationship between Russell and Grace Shugart, but were simply contingent beneficiaries of Grace's estate plan.

As stated, the *Pelham* court concluded that nonclient plaintiffs seeking to recover for legal malpractice must

demonstrate that they are in the nature of third-party intended beneficiaries of the relationship between the attorney and client. (92 Ill. 2d at 20.) The court explained that analogizing an attorney's duty to the third-party beneficiary concept operates to limit the scope of the duty which an attorney owes to a nonclient. The court stated that the "key consideration" is whether the attorney acted at the direction of or on behalf of the client to benefit or influence a third party. (92 Ill. 2d at 21.) Applying this "intent to directly benefit" test to the facts alleged in the complaint, the *Pelham* court concluded that the plaintiffs could not maintain an action for legal malpractice against their mother's attorney because they were not intended beneficiaries of the contract between the defendant-attorney and their mother. 92 Ill. 2d at 23.

The defendants argue that this case is analogous to *Pelham*. They argue that the evidence shows that the primary purpose of the attorney-client relationship between Russell and Grace Shugart was to prepare a general testamentary plan to benefit Grace's sister, Helen. They claim that Grace wanted her property, including her interest in the farm, to pass to her sister, Helen, if Grace died first. They argue that the plaintiffs were therefore contingent, rather than intended, beneficiaries of the attorney-client transaction at issue here.

The plaintiffs, however, from the record convincingly proved that Grace intended to devise her one-half interest in the farm to them regardless of whether she predeceased her sister, and that the primary purpose of the engagement in 1975 of Russell by Grace, in which Russell drafted Grace's will, was to benefit the McLanes. The evidence established that Russell drafted a will for Grace Shugart in 1961, which devised all of her property to Helen. Shortly after her sister, Helen, was declared incompetent, however, Grace asked Russell whether she, as joint tenant of the farm, could convey her one-half in-

terest in the farm to Cecil McLane. Russell informed her that a joint tenant could, presumably by severing the joint tenancy and converting it into a tenancy in common, convey her half interest in property to a third party. Grace then asked Russell to prepare a deed conveying her interest in the farm to Cecil McLane. She subsequently decided not to make this conveyance, because Russell informed her that the transaction would be subject to a substantial gift tax.

In 1975, Grace asked Russell to draft a new will, the terms of which would benefit the McLanes. The defendants argue that Grace presumed, at the time she executed the will, that she would be the sole surviving owner of the farm, and did not intend the will to take effect if she predeceased her sister. The defendants do not explain, however, why Grace's will devises only her interest in the farm, rather than the entire farm, to the McLanes. The language used in the will suggests that Grace intended to devise her interest in the farm to the McLanes regardless of whether or not she was the surviving joint tenant. The only evidence which arguably suggests that Grace did not intend to devise the farm to the McLanes, if she predeceased her sister, was the fact that Grace never severed the joint tenancy prior to her death. This evidence is not particularly probative of Grace's intent, however, given Russell's admitted failure to advise Grace explicitly that severance of the joint tenancy was necessary if she wanted the McLanes, rather than her sister, to take the farm if she died first.

Russell's testimony at trial suggests that he believed, at the time he executed Grace's 1975 will, that Grace intended to devise her interest in the farm to the McLanes whether or not she survived her sister. Russell admitted that he told Cecil McLane, shortly after drafting Grace's will, that Cecil would get a life estate in the farm with the remainder to Keith under Grace's will, and that he

and Keith would receive the entire farm, rather than half of the farm, if Helen predeceased Grace. Several other witnesses testified that Grace Shugart intended to devise her one-half interest in the farm to the McLanes upon her death. The evidence showed that Grace Shugart engaged Russell to draft a will which would transfer her interest in the farm to the McLanes upon her death. Applying the "intent to directly benefit" standard in *Pelham* to the facts alleged in the complaint, we conclude that the plaintiffs were intended, rather than contingent, third-party beneficiaries of the contract for professional services between the defendant-attorney and his client, Grace Shugart.

We next consider whether the trial court erred in denying the defendants' motion to transfer venue from Peoria County to Bureau County. At the hearing on the defendants' motion, the plaintiffs argued that the defendant law firm, Johnson, Martin & Russell, was doing business in Peoria County within the meaning of section 2—102 of the Illinois Code of Civil Procedure. That section provides that a private corporation is a resident of any county in which it is doing business. (Ill. Rev. Stat. 1987, ch. 110, pars. 2—102(a), (b).) The evidence at the hearing established that the law firm represented clients in eight cases pending in the Bankruptcy Court for the Central District of Illinois in Peoria. This representation by the law firm was limited to filing proofs of claim for creditors in pending bankruptcy proceedings. The trial court concluded that the defendant law firm's activity in Peoria County was sufficient to meet the requirement of "doing business" within that county for purposes of venue and denied the defendants' motion to transfer venue.

The trial court's order that venue was proper in Peoria County, because the defendant law firm was "doing business" within that county within the meaning of

section 2—102, could have been immediately appealed under Supreme Court Rule 306 (107 Ill. 2d R. 306(a)(1)(iv)). Rule 306(a)(1)(iv) permits appeals by permission within 30 days after the entering of an order of a circuit court granting or denying a motion for a transfer of venue following a charge that the defendant is not a resident of the county in which the action was commenced. (107 Ill. 2d R. 306(a)(1)(iv).) The defendants chose not to seek interlocutory review under Supreme Court Rule 306, choosing instead to raise the issue on appeal after trial. The appellate court affirmed the trial court's decision that the law firm's level of activity in Peoria County was of sufficient substance and volume to fix venue in that county. 159 Ill. App. 3d at 434.

The defendants argue in this appeal that the trial and appellate courts improperly concluded that the filing of eight proofs of claim in bankruptcy proceedings in Peoria County constituted "doing business" in that county for purposes of establishing venue. The plaintiffs respond that the defendants are precluded from raising the venue issue on appeal. They allege that Rule 306 provides the only method of appealing a trial court order denying a motion to transfer venue. The plaintiffs also say that the trial and appellate courts correctly decided that the defendant law firm was "doing business" in Peoria County for purposes of establishing venue in that county.

We need not address the contentions raised by the parties because we conclude that section 2—105 of the Illinois Code of Civil Procedure bars the defendants from raising the venue issue in this appeal. (Ill. Rev. Stat. 1987, ch. 110, par. 2—105.) That section provides:

"In any action involving defendants residing in different counties in which venue is based on residence and an appropriate and timely motion to transfer is made by a defendant not residing in the county, the overruling of

the motion is not ground for reversal if he or she proceeds to trial on the merits, unless he or she renews the motion at the close of all the evidence and it appears from the record or the evidence that the defendant residing within the county was joined without probable cause and not in good faith for the purpose of obtaining a judgment against him or her but solely for the purpose of fixing venue in that county." Ill. Rev. Stat. 1987, ch. 110, par. 2—105.

In this case, venue in Peoria County was premised upon the plaintiffs' allegation that one of the defendants, the law firm of Johnson, Martin & Russell, was a resident of Peoria County under section 2—102 of the Illinois Code of Civil Procedure, because it was doing business in that county. (Ill. Rev. Stat. 1987, ch. 110, par. 2—102(a).) The other defendant, attorney Fred Russell, resided and transacted business in Bureau County. Although the defendants made a timely motion to transfer venue, they did not appeal or seek to appeal the trial court's order denying their motion, but proceeded to trial on the merits. The record shows that the defendants did not at the close of all of the evidence at trial renew the motion to transfer venue, as required by section 2—105 (Ill. Rev. Stat. 1987, ch. 110, par. 2—105). Thus, they are precluded on appeal from seeking reversal of the trial court's decision rejecting the claim of improper venue.

We finally consider whether the proceeds of the pretrial settlement the plaintiffs made with Helen Shugart's estate should be set off against the damages awarded at trial. At the time the malpractice suit we consider here was pending, the McLanes entered into a settlement of their claim against Helen's estate for damages resulting from the loss of the entire Shugart farm. In that settlement, the McLanes received $100,000 and real property valued at $32,912.50.

After the jury returned a verdict for the plaintiffs for $325,000, the defendants moved to reduce this award by $132,912.50, the amount which the plaintiffs received in settlement of their claim against Helen's estate. The trial court allowed the motion in part, and reduced the award by one-half of the amount the McLanes received in the pretrial settlement. The trial court reasoned that the suit involved in this appeal sought damages stemming from the loss of Grace's undivided one-half interest in the Shugart farm. The suit against Helen Shugart's estate, on the other hand, sought to recover the entire Shugart farm. The court concluded that one-half of the settlement amount the McLanes received from Helen's estate represented a partial recovery of the value of Grace's undivided one-half interest in the farm. The court therefore reduced the judgment award by one-half of the settlement award. The appellate court affirmed, concluding that the setoff prevented the McLanes from recovering twice for the loss of Grace's undivided one-half interest in the farm.

The plaintiffs argue that the defendants were not entitled to a setoff and ask for reinstatement of the judgment in full. They argue that there is no danger of a double recovery, and therefore no basis for a setoff, because they did not receive a sum equal to the total value of the entire Shugart farm. The plaintiffs cite *Clear-Vu Packaging, Inc. v. National Union Fire Insurance Co.* (1982), 105 Ill. App. 3d 671, as authority for this argument.

It has been long recognized that a plaintiff shall have only one satisfaction for an injury. (*Dial v. City of O'Fallon* (1980), 81 Ill. 2d 548, 558; *DuPree v. Terry* (1971), 1 Ill. App. 3d 169.) The purpose of compensatory damages is to compensate the plaintiff for damages sustained, and not to punish the defendant or to award a windfall to the plaintiff. (*Dial v. City of O'Fallon* (1980),

81 Ill. 2d 548, 558.) Here, the plaintiffs seek compensation for the loss of Grace Shugart's one-half interest in the farm. The amount which the plaintiffs received in settlement with Helen Shugart's estate for loss of the entire farm represented in part a recovery for the plaintiffs' loss of Grace's one-half interest in the farm. Thus, the damages the jury awarded to the plaintiffs to compensate for their loss of Grace Shugart's interest in the farm may properly be reduced by one-half of the amount the plaintiffs received in settlement with Helen Shugart's estate for the same injury.

The trial court's decision was entirely consistent with the decision in *Clear-Vu*. There, the plaintiff sustained $2,024,400 in damages as a result of a fire upon his property. Although the insurer disputed coverage, it settled with the plaintiff for $1,250,000. Subsequently, the plaintiff sued his insurance agent for failing to procure the proper insurance for him. The plaintiff sought damages for his entire loss, less the settlement amount paid by the insurer. The court concluded that the loss the plaintiff sustained as a result of the agent's failure to procure the proper policy was distinct from the loss the plaintiff suffered as a result of the insurer's refusal to pay on the insurance policy.

The *Clear-Vu* court also concluded that there was no danger of double recovery because the plaintiff sought only to recover the difference between his total loss and the amount he received in settlement with the insurer. Here, too, the amount the McLanes received in settlement with Helen Shugart's estate represented a partial recovery for their loss of Grace's half interest in the farm. The trial court reasonably concluded that this partial recovery must be deducted from the amount the plaintiffs were awarded for the total loss of Grace's half interest in the farm to avoid a double recovery.

For the reasons stated, the judgments of the circuit and appellate courts are affirmed.

*Judgments affirmed.*

JUSTICE RYAN took no part in the consideration or decision of this case.