2018 IL App (1st) 171915

No. 1-17-1915

Fourth Division
June 28, 2018

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

|  |  |  |
|---|---|---|
| MICHELE PRANNO DONKLE, | ) | Appeal from the Circuit Court |
|  | ) | of Cook County. |
| Plaintiff-Appellant, | ) |  |
|  | ) | No. 16 L 007274 |
| v. | ) |  |
|  | ) | The Honorable |
| CARY A. LIND and CARY A. LIND, P.C., | ) | William E. Gomolinski, |
|  | ) | Judge Presiding. |
| Defendants-Appellees. | ) |  |
|  | ) |  |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1    The instant appeal arises from a legal malpractice lawsuit filed by plaintiff Michele Pranno Donkle against attorney defendants Cary A. Lind and Cary A. Lind, P.C., in which plaintiff alleges that defendants owed plaintiff a duty to inform her of a claim plaintiff had against her mother's estate during the course of defendants' representation of plaintiff with respect to a lawsuit filed by plaintiff's sister. Defendants filed a motion to dismiss the complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2016)), claiming that defendants represented plaintiff only in her capacity as trustee of her mother's trust and did not represent plaintiff in her individual capacity,

meaning that defendants had no duty to inform plaintiff of her individual claim against the estate. The trial court granted defendants' motion to dismiss, and for the reasons that follow, we affirm the trial court's judgment.

¶ 2                                    BACKGROUND

¶ 3                                     I. Complaint

¶ 4                            A. Allegations of Complaint

¶ 5        On July 22, 2016, plaintiff filed a complaint for legal malpractice against defendants; the complaint was amended on March 21, 2017.  It is the amended complaint that is the subject of the instant appeal. The amended complaint alleges that plaintiff is the daughter of Louise J. Pranno, now deceased, and is the successor trustee to the Amended First Restatement of the Louise J. Pranno Trust, dated January 27, 1998 (the trust). For at least five years prior to the death of her mother, plaintiff provided personal care to her mother, who was completely disabled and required assistance with most of her activities of daily living, which caused plaintiff "significant financial[ ] and professional hardship and was done at a significant personal sacrifice to Plaintiff." Although plaintiff resided with her husband in a home in Libertyville, when her mother became unable to care for herself, plaintiff began living in her mother's home and apart from her husband, which continued for six to seven years while plaintiff cared for her mother.

¶ 6        The amended complaint alleges that plaintiff "was the nominated executor of Louise J. Pranno Will dated March 30, 2007 if the will was admitted to probate and her probate estate administered." The amended complaint further alleges that, at all relevant times, the Probate Act of 1975 (Probate Act) contained a provision permitting a statutory custodial claim against a decedent's estate for "[a]ny spouse, parent, brother, sister, or child of a disabled

person who dedicates himself or herself to the care of the disabled person by living with and personally caring for the disabled person for at least 3 years." 755 ILCS 5/18-1.1 (West 2012).

¶ 7    The amended complaint alleges that Louise J. Pranno died on September 16, 2013, and on September 23, 2013, plaintiff's sister filed suit against plaintiff in the circuit court of Cook County in an action captioned "Faith Mary Pranno v. Michele J. Pranno Donkle, as Successor Trustee to the Amended First Restatement of the Louise J. Pranno Trust dated January 27, 1998" (the underlying litigation).[1] According to the amended complaint, "[t]he allegations of the underlying Chancery Action related to Plaintiff's conduct of her duties as the Successor Trustee and Executor of Louise Pranno's will. Specifically, Plaintiff's sister alleged that Plaintiff improperly distributed the assets of the Estate and otherwise was committing waste as to the Estate property." The amended complaint further alleges that

"[t]he Chancery Action sounded in claims for breach of fiduciary duty, redistribution of a beneficial interest, injunctive relief, and seeking an accounting. [Citation.] The Chancery Action sought to 're-marshal and reallocate the distribution of tangible personal property and property owned by Decedent', which would have necessitated the disgorgement of property and funds from Plaintiff, in her personal capacity, as well as from the other beneficiaries. [Citation.] Further, the Chancery Action sought relief wherein Plaintiff (personally) was to pay the Trust the fair market value of the Trust's real property for the

---

[1]The underlying complaint lists the date of the decedent's death as September 16, 2012, and not September 16, 2013, as alleged in the amended complaint. Plaintiff repeats the 2013 date in her brief on appeal but, given the allegations in the underlying complaint, it is likely that the 2012 date is the correct one. However, this has no bearing on the issues on appeal.

period of time that Plaintiff resided there, *while she cared for her mother*.[2] [Citation.]" (Emphasis in original.)

¶ 8    The amended complaint set forth a single count for legal malpractice, which included the allegation that "[i]n 2013, Plaintiff and Defendants entered into an attorney-client relationship wherein Defendants agreed to represent Plaintiff in the Chancery Action." The amended complaint alleges that the claims in the underlying complaint "effectively sought disgorgement and the re-allocation of assets from Plaintiff in her personal capacity, not solely in her capacity as a Trustee of the Trust." The amended complaint further alleges that "Defendants, in effect, undertook to represent Plaintiff in the defense of the Chancery Action both in Plaintiff's capacity as Trustee and in Plaintiff's individual capacity." According to the amended complaint, during the course of this representation, defendants failed to advise plaintiff that she could, in her individual capacity, seek recovery under the Probate Act for her statutory custodial claim and failed to advise plaintiff of the time limitations in making such a claim. Defendants also failed to advise plaintiff "that the filing of such a claim would reduce the litigation expense and provide for a superior settlement in the underlying Chancery Action." Accordingly, the amended complaint alleges that defendants breached the standard of care owed to plaintiff, causing plaintiff damages including the loss of the ability to recover compensation for the time and effort in providing care to her mother and additional litigation expenses incurred as a result of the underlying litigation.

---

[2]This statement is factually untrue, as is evident when reading the allegations of the underlying complaint, as discussed below. The underlying complaint seeks payment of rent for the period of time *after the decedent's death* in which plaintiff continued to reside at the property. The underlying complaint does not address plaintiff's living at the property while she cared for her mother.

¶ 9                              B. Trust Agreement and Will

¶ 10          Attached to the amended complaint was a copy of the trust agreement, in which plaintiff was named as successor trustee. The trust agreement set forth several specific gifts, including a provision that, upon the decedent's death, her home "shall be sold as soon as is practical after my death" and that plaintiff was to receive 10% of the net proceeds of sale "for assisting me [to] maintain my home. This payment shall be in lieu of all fees for acting as successor trustee or executor of my estate." The trust agreement also granted plaintiff the right of first refusal to purchase the decedent's home from the trust or estate for fair market value at the time of the decedent's death. Other than the specific gifts, the trust agreement provided that the balance of the trust assets were to be equally distributed among the decedent's three children.

¶ 11          Also attached to the amended complaint was a copy of the decedent's will, which named plaintiff as the executor. The will provided that all of the property owned at the decedent's death would be bequeathed to the trust and would be distributed as provided therein.

¶ 12                              C. Underlying Complaint

¶ 13          Finally, attached to the amended complaint was a copy of the underlying complaint filed by plaintiff's sister, which named as defendant "Michele J. Pranno Donkle, as Successor Trustee to the Amended First Restatement of the Louise J. Pranno Trust Dated January 27, 1998." According to the underlying complaint, the decedent died on September 16, 2012, but despite plaintiff's position and responsibilities as executor and successor trustee, plaintiff failed to notify her sister of the death. Additionally, the underlying complaint alleged that plaintiff failed to properly probate the decedent's will so that she could legally transfer the decedent's property to the trust, but nevertheless, in October 2012, plaintiff began

5

distributing the decedent's property "in shares of non-equal value to beneficiaries and non-beneficiaries" of the will and trust. Specifically, the underlying complaint alleged that plaintiff failed to distribute to her sister "all of what she was supposed to receive pursuant to the terms of the Will" and trust. The underlying complaint alleged that plaintiff also conducted an estate sale in November 2012, collecting $3439.64, which plaintiff did not distribute equally to the beneficiaries.

¶ 14    The underlying complaint also alleged that plaintiff failed to list and sell the real property owned by decedent as of her death and "[i]n fact, upon information and belief, [plaintiff] is residing, 'rent-free', in the real property owned by Decedent as of her death." The underlying complaint alleged that plaintiff was devaluing and causing waste to the property "because she is not properly cleaning, preparing and/or repairing the real property for listing, and is residing, 'rent-free', in the real property resulting in the real property not being available for 'showing' to prospective purchasers and/or renters." The underlying complaint alleges that on March 8, 2013, plaintiff's sister, through counsel, sent plaintiff a demand for an accounting of the assets and expenses of the trust, which plaintiff failed to provide.

¶ 15    The underlying complaint set forth four causes of action. Count I was for breach of fiduciary duty, alleging that plaintiff had breached the fiduciary duties owed by her as executor and successor trustee. Count I requested the following relief: (1) a finding in favor of plaintiff's sister and against plaintiff on count I, (2) a finding that plaintiff had breached her fiduciary duty to her sister, (3) the removal of plaintiff as successor trustee of the trust and replacement with an alternate successor trustee, (4) an order requiring the alternate successor trustee to immediately list and sell the real property owned by the decedent as of her death and distribute the proceeds pursuant to the terms of the trust, (5) an order requiring

6

the alternate successor trustee "to re-marshal and reallocate the distribution of the tangible personal property and other property owned by Decedent as of her death so that [plaintiff's sister] receives an equal share of said property," (6) an order requiring the alternate successor trustee to prepare and file an accounting of the assets and expenses of the trust, (7) an order requiring plaintiff to pay to the trust "the fair market, rental value of her residency at the real property for the period of time [plaintiff] has resided, 'rent-free', at the real property, based upon [plaintiff's] breach of fiduciary duty," (8) damages in excess of $50,000, and (9) an award of attorney fees.

¶ 16    Count II was for distribution of beneficial interest and alleged that plaintiff had failed to distribute to her sister her beneficial interest in the assets of the trust. Count II requested the following relief: (1) a finding against plaintiff and in favor of plaintiff's sister on count II, (2) a finding that plaintiff failed to distribute to her sister her beneficial interest in the assets of the trust, (3) an order requiring the immediate distribution to plaintiff's sister of her beneficial interest in the trust assets, including her beneficial interest in the real property owned by the decedent as of her death, and (4) an award of attorney fees.

¶ 17    Count III was for injunctive relief and alleged that plaintiff, "by not paying rent while residing at the real property owned by Decedent as of her death, has failed to pay income to, and devalued, [the trust], resulting in a waste of the assets of" the trust. Count III requested that plaintiff be (1) enjoined from residing at the real property owned by decedent as of her death without paying the fair market rental value of residing at the property, (2) required to reimburse the trust the fair market rental value of residing at the property to date, and (3) prohibited from using the trust assets to retain and pay for counsel to defend the underlying litigation.

¶ 18     Count IV was for an accounting and requested a finding that plaintiff had failed to account to her sister for the assets and expenses of the trust and an order requiring the immediate preparation and production of an accounting of the assets and expenses to date of the trust, including the rents received and expenses incurred on behalf of the real property owned by the decedent as of her death.

¶ 19                              II. Motion to Dismiss

¶ 20     On April 28, 2017, defendants filed a motion to dismiss the amended complaint pursuant to section 2-619 of the Code, claiming that defendants represented plaintiff only in her capacity as successor trustee of the trust and that defendants did not and, ethically, could not have represented plaintiff in her individual capacity, as such representation would have been a direct conflict of interest with the representation of plaintiff in her capacity as successor trustee of the trust and would have violated the Rules of Professional Conduct.

¶ 21     Attached to the motion to dismiss was the affidavit of defendant Cary Lind, in which he averred that on December 9, 2013, he "entered into an attorney-client relationship with Michelle [*sic*] Pranno Donkle, not individually, but solely in her capacity as Successor Trustee of the Amended First Restatement of the Louise J. Pranno Trust dated January 27, 1998." Lind further asserted that

     "[t]he purpose of this attorney-client relationship was to defend the plaintiff in the lawsuit that had been filed against her in the Circuit Court of Cook County, Illinois, in her capacity as Successor Trustee of the Amended First Restatement of the Louise J. Pranno Trust dated January 27, 1998, captioned *Faith Mary Pranno v. Michelle J. Pranno Donkle, as Successor Trustee to the Amended First Restatement of the Louise J. Pranno Trust dated January 29, 1998*, Case No. 2013 CH 21754. Neither I nor Cary A. Lind,

P.C., were retained to represent, agree[d] to represent, or undertook to represent the plaintiff in any other matter or in any capacity other than her capacity as Trustee."

¶ 22 Lind alleged that on December 19, 2013, he filed his appearance with the court in the underlying litigation "on behalf of the plaintiff in her capacity as Successor Trustee of [the trust]." He further averred that "[n]either I nor Cary A. Lind, P.C., were retained to represent nor did we agree to represent or undertake to represent the plaintiff in any other matter." Lind maintained that he continued to represent plaintiff in her capacity as successor trustee of the trust until November 20, 2014.

¶ 23 Attached to Lind's affidavit was an "Agreement for Legal Services," dated December 9, 2013, and signed by plaintiff. Directly under the heading "Agreement for Legal Services" were two lines:

"CLIENT: MICHELE J. PRANNO DONKLE, as Trustee

MATTER: DONKLE adv. PRANNO"

The agreement provided that "CARY A. LIND, P.C. ('Attorney'), agrees to provide legal services to Client in connection with the above matter. Unless Client and Attorney enter into a different written agreement, this Agreement will govern all future services which Attorney may perform for Client."

¶ 24 Also attached to Lind's affidavit was a December 19, 2013, appearance entered in the underlying litigation, which provided that "CARY A. LIND, P.C., hereby files its Appearance on behalf of Defendant, MICHELE J. PRANNO DONKLE, as said Trustee in this cause."

¶ 25 Finally, attached to Lind's affidavit was a November 17, 2014, "Consent to Withdrawal and Substitution of Attorneys," entered in the underlying litigation, which provided that

9

"MICHELE J. PRANNO DONKLE ('MOVANT'), As Successor Trustee to the Amended First Restatement of the Louise J. Pranno Trust Dated January 27, 1998, hereby consents to the appearance of GAROFALO LAW GROUP as counsel on her behalf in the place and stead of CARY A. LIND, P.C. in the above-titled cause."

¶ 26                                  III. Trial Court Order

¶ 27        On June 27, 2017, the trial court granted defendants' motion to dismiss and dismissed plaintiff's amended complaint with prejudice. Plaintiff filed a timely notice of appeal, and this appeal follows.

¶ 28                                       ANALYSIS

¶ 29        On appeal, plaintiff claims that the trial court erred in granting defendants' motion to dismiss because defendants owed plaintiff a duty to inform her of her statutory custodial claim under the Probate Act. A motion to dismiss under section 2-619 admits the legal sufficiency of all well-pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 83 (citing *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006)). When reviewing a motion to dismiss under section 2-619, "a court must accept as true all well-pleaded facts in plaintiffs' complaint and all inferences that can reasonably be drawn in plaintiffs' favor." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). Additionally, a cause of action should not be dismissed under section 2-619 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277-78 (2003). For a section 2-619 dismissal, our standard of review is *de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006); *Morr-Fitz, Inc.*, 231 Ill. 2d at 488. *De novo* consideration means we

perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). Additionally, even if the trial court dismissed on an improper ground, a reviewing court may affirm the dismissal if the record supports a proper ground for dismissal. See *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004) (when reviewing a section 2-619 dismissal, we can affirm "on any basis present in the record"); *In re Marriage of Gary*, 384 Ill. App. 3d 979, 987 (2008) ("we may affirm on any basis supported by the record, regardless of whether the trial court based its decision on the proper ground").

¶ 30        As an initial matter, we do not find persuasive plaintiff's claim that defendants' motion was procedurally improper. As noted, "[a] motion for involuntary dismissal under section 2-619 admits the legal sufficiency of the plaintiff's claim but asserts 'affirmative matter' outside of the pleading that defeats the claim." *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008). "Affirmative matter may be 'something in the nature of a defense that completely negates the cause of action or refutes crucial conclusions of law or conclusions of material fact contained in, or inferred from the complaint.' " *Harris v. Vitale*, 2014 IL App (1st) 123514, ¶ 23 (quoting *Golden v. Mullen*, 295 Ill. App. 3d 865, 869 (1997)). In the case at bar, the "affirmative matter" asserted by defendants was their claim of lack of a duty, which was supported by the submission of Lind's affidavit, the retainer agreement, and the appearance filed in the underlying litigation, and which negated the legal malpractice cause of action and refuted the conclusions contained in the complaint that defendants represented plaintiff in her individual capacity. See *Buckner v. O'Brien*, 287 Ill. App. 3d 173, 177 (1997) (finding that a section 2-619 motion was properly granted because allegations in complaint were "negated and defeated by the affirmative matter [contained in an affidavit] that [the affiant] was not

plaintiff's employer and had no authority to hire or discharge plaintiff"); *Milz v. M.J. Meadows, Inc.*, 234 Ill. App. 3d 281, 287 (1992) ("Whether a duty exists is a question of law to be determined by the court [citation], and the nonexistence of a duty may be the basis for a section 2-619 motion to dismiss [citations]."); *Wood v. Village of Grayslake*, 229 Ill. App. 3d 343, 349 (1992) ("The issue of whether the defendant owed plaintiff a duty of care is a question of law to be determined by the trial court which is properly asserted in a motion to dismiss pursuant to section 2-619."); *Gilmore v. City of Zion*, 237 Ill. App. 3d 744, 753 (1992) (section 2-619 motion to dismiss that was supported by affidavit averring that accident occurred after the beginning of the school day "included affirmative matters in the nature of a defense which negated the City's cause of action" and so dismissal was proper).

¶ 31      Additionally, plaintiff's claims that "the arguments put forth by Defendants' motion in the trial court were riddled with questions of fact, including what [plaintiff] knew or understood the representation to entail and what Defendants' conduct during their representation entailed" is an insufficient basis to dispute the validity of their section 2-619 motion. "Once a defendant satisfies th[e] initial burden of going forward on the section 2-619(a)(9) motion to dismiss, the burden then shifts to the plaintiff, who must establish that the affirmative defense asserted either is 'unfounded or requires the resolution of an essential element of material fact before it is proven.' " *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997) (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993)). The plaintiff may establish this by presenting "affidavits or other proof denying the facts alleged or establishing facts obviating the grounds of defect." 735 ILCS 5/2-619(c) (West 2016). "The plaintiff's failure to properly contest the defendant's affidavit by submitting a counteraffidavit may be fatal to his cause of action, as the failure to

challenge or contradict supporting affidavits filed with a section 2-619 motion results in an admission of the fact stated therein." *Philadelphia Indemnity Insurance Co. v. Pace Suburban Bus Service*, 2016 IL App (1st) 151659, ¶ 22 (citing *Fayezi v. Illinois Casualty Co.*, 2016 IL App (1st) 150873, ¶ 44). In the case at bar, the record does not contain any counteraffidavits challenging defendants' claims concerning the scope of their duty. We thus cannot find that it was procedurally improper for defendants to proceed under section 2-619 of the Code.

¶ 32    Turning, then, to the merits of plaintiff's claim, we cannot find that the trial court erred in dismissing plaintiff's amended complaint. "To state a claim for legal malpractice, a plaintiff must plead and prove that the defendant attorneys owed the plaintiff a duty of due care arising from the attorney-client relationship, that the defendants breached that duty, and that as a proximate result, the plaintiff suffered injury." *In re Estate of Powell*, 2014 IL 115997, ¶ 13 (citing *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005)). "The determination of whether a duty exists is an issue of law to be determined by the court." *McLane v. Russell*, 131 Ill. 2d 509, 514 (1989). "To conclude that a duty exists, a court must find that the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *McLane*, 131 Ill. 2d at 514-15. In the case at bar, we cannot find that the trial court erred in finding that no such duty existed between defendants and plaintiff in her individual capacity.

¶ 33    "Typically, an attorney owes a professional obligation only to his client, not to nonclient third persons." *McLane*, 131 Ill. 2d at 515. "The attorney-client relationship is a voluntary, contractual relationship that requires the consent of both the attorney and client." *People v.*

*Simms*, 192 Ill. 2d 348, 382 (2000). "Being a consensual relationship, '[t]he client must manifest [his] authorization that the attorney act on [his] behalf, and the attorney must indicate [her] acceptance of the power to act on the client's behalf.' " *Simms*, 192 Ill. 2d at 382 (quoting *Simon v. Wilson*, 291 Ill. App. 3d 495, 509 (1997)). In the case at bar, the record reflects that defendants' "client" was plaintiff in her capacity as successor trustee of the decedent's trust. The underlying lawsuit named only plaintiff in her representative capacity as a defendant, and the retainer agreement listed plaintiff "as Trustee" as the client. Additionally, the appearance filed by defendants listed only plaintiff in her representative capacity. Accordingly, defendants owed duties only to their client—plaintiff in her representative capacity—and did not owe any duties to plaintiff in her individual capacity. See *Adler v. Greenfield*, 2013 IL App (1st) 121066, ¶ 61 (making clear that case at issue was filed by beneficiaries in their individual capacities as opposed to being filed by the executor in her representative capacity); *In re Estate of Wagner*, 184 Ill. App. 3d 882, 885 (1989) (noting the general principle in which an administrator of an estate may not appeal in his representative capacity from an order affecting his personal rights as an heir or legatee).

¶ 34     We are unpersuaded by plaintiff's contention that defendants were actually representing plaintiff in both her representative and individual capacities, based on her claim that the underlying lawsuit sought relief against plaintiff individually as well as in her representative capacity. As noted, the underlying lawsuit clearly named only plaintiff in her representative capacity as successor trustee of the decedent's trust as a party to the lawsuit. All four causes of action set forth in the underlying complaint were based on alleged violations of plaintiff's duties as trustee, and any relief sought in the underlying lawsuit occurred in that context. Moreover, "[t]he attorney-client relationship is a voluntary, contractual relationship that

requires the consent of both the attorney and client." *Simms*, 192 Ill. 2d at 382. The record shows that defendants consented only to represent plaintiff in her representative capacity, and plaintiff does not point to any evidence demonstrating that such representation was broader in scope other than her bare allegations to the contrary. Vague assertions are not sufficient to demonstrate the existence of a material fact in opposing a motion to dismiss. See *Roberts v. Dow Chemical Co.*, 244 Ill. App. 3d 253, 257 (1993). As noted, in the case at bar, defendants presented evidence in their motion to dismiss, and plaintiff did not submit any counteraffidavits to counter that evidence. See *Philadelphia Indemnity Insurance*, 2016 IL App (1st) 151659, ¶ 22 ("The plaintiff's failure to properly contest the defendant's affidavit by submitting a counteraffidavit may be fatal to his cause of action, as the failure to challenge or contradict supporting affidavits filed with a section 2-619 motion results in an admission of the fact stated therein."). Accordingly, the trial court properly found that plaintiff in her individual capacity was not owed any duties by defendants.

¶ 35    We are similarly unpersuaded by plaintiff's reliance on *Keef v. Widuch*, 321 Ill. App. 3d 571 (2001), the primary case plaintiff relies on in support of her argument that defendants owed her a duty to inform her of her potential individual claim. In that case, a divided appellate court found that, despite a retainer agreement limiting the scope of representation to workers' compensation issues, the defendant attorneys owed the plaintiff a duty to inform him of the possibility of third party actions arising out of the injury. *Keef*, 321 Ill. App. 3d at 579. Specifically, the court held that, "in the unique circumstances of this case, workers' compensation attorneys should have a duty to clients to advise them about the possibility of third-party actions and either to investigate such claims or to advise the clients to consult other counsel about such claims." *Keef*, 321 Ill. App. 3d at 579.

¶ 36    In the case at bar, plaintiff argues that "[t]he present matter is directly analogous to the situation contemplated by this Court in *Keef*." However, the fatal flaw in plaintiff's argument is her gloss over the *Keef* court's actual holding—that "workers' compensation attorneys should have a duty *to clients* to advise them about the possibility of third-party actions and either to investigate such claims or to advise *the clients* to consult other counsel about such claims." (Emphases added.) *Keef*, 321 Ill. App. 3d at 579. As established above, plaintiff in her individual capacity was not defendants' client. This is not a situation in which defendants represented a client on one matter and failed to inform that client about a different potential claim, as was the case in *Keef*. Instead, plaintiff is attempting to have this court impose a requirement for an attorney to inform a nonclient about potential claims that the nonclient has, to the detriment of its client, no less. This we cannot do. *Keef* is entirely inapplicable to the instant situation and we cannot find that the trial court erred in dismissing plaintiff's complaint.

¶ 37    Since we have determined that the trial court properly found that plaintiff was not defendants' client in her individual capacity—and, therefore, was not owed a duty by defendants—we have no need to consider defendants' alternative basis for dismissal, namely, that requiring them to advise plaintiff of her claim under the Probate Act would have resulted in a conflict of interest that would have violated the Rules of Professional Conduct.

¶ 38                                    CONCLUSION

¶ 39    For the reasons set forth above, the trial court properly dismissed plaintiff's amended complaint because defendants did not have a duty to inform her of her potential statutory custodial claim under the Probate Act.

¶ 40    Affirmed.